Defendant-appellant Mark Nathan Singerman appeals from the denial of his petition for post-conviction relief and of his motion for a new trial, following a hearing. Singerman contends that the trial court erred when it concluded that he failed to prove that the State withheld exculpatory evidence, or that there was newly discovered evidence that could not, with reasonable diligence, have been discovered at the time of the original trial, which might have affected the outcome of the trial. Singerman also contends that the trial court erred by failing to make the original tape recordings of his alleged drug transactions available for examination by his expert. Finally, Singerman contends that the trial court erred by permitting the State to call him as a witness, as upon cross-examination, at the hearing.
Based upon our review of the record, we conclude that there is evidence in the record from which the trial court could find that Singerman failed to prove either that the State withheld exculpatory evidence, or that there was newly discovered evidence that could not, without reasonable diligence, have been discovered at the time of the original trial. We further conclude that Singerman implicitly abandoned his earlier attempt to have his expert examine the original tape recordings after it appeared that the court-appointed expert, who had examined the originals, had found the existence of alterations in the tapes. Finally, we conclude that any error with respect to Singerman's having been called by the State to testify as upon cross-examination was cured when the State offered to agree that Singerman's testimony be stricken from the record, and Singerman's counsel declined the offer.
The judgment of the trial court is Affirmed.
 I
In 1993, Singerman was in indicted upon one count of Trafficking in Drugs, and one count of Aggravated Trafficking in Steroids. Following a jury trial, he was convicted, and sentenced accordingly. Singerman appealed from his conviction and sentence, and we affirmed. The Ohio Supreme Court declined to review his conviction.
Thereafter, Singerman filed a petition for post-conviction relief. His petition was denied, without a hearing. On appeal, we reversed, and ordered an evidentiary hearing. On remand, an evidentiary hearing was held, and Singerman's petition for post-conviction relief was again denied. On appeal, we again reversed, concluding that the trial court had too narrowly construed our mandate. The trial court had limited Singerman's claim to a claim that one or more of the tape recordings of his alleged drug transactions were missing. In view of the evidence then available to Singerman, his claim had evolved into a claim that there were erasures or alterations on the tapes that omitted exculpatory evidence. In our judgment of November 26, 1997, we held that the trial court had too narrowly limited the scope of the hearing on Singerman's petition, and remanded the cause.
On remand, the trial court engaged the services of an expert, and sent the tapes to the expert for review. At the hearing, the trial court called the expert, and he was cross-examined by both parties. Both parties also called their own witnesses, neither of whom had listened to the original tape recordings.
Towards the conclusion of the hearing, the State called Singerman, as upon cross-examination, to which Singerman's trial counsel objected. The trial court overruled the objection, and Singerman was called to the witness stand. At no point during his testimony did Singerman interpose a claim of privilege, pursuant to the Fifth Amendment to the United States Constitution, and at no point was he specifically ordered by the trial court to answer any particular questions. In its closing argument, the State offered that it would not oppose a motion to strike Singerman's testimony. Before the hearing was complete, the State asked Singerman's counsel if he wished to have Singerman's testimony stricken from the record, but this offer was declined.
At some point before the hearing, Singerman had joined a motion for a new trial, based upon newly discovered evidence, to his petition for post-conviction relief. During the proceedings, it was clear that the trial court was hearing both matters. Following the hearing, the trial court rendered a decision denying both the petition for post-conviction relief, and the motion for a new trial. From that decision, Singerman appeals.
 II
Singerman's First Assignment of Error is as follows:
 THE LOWER COURT PREJUDICIALLY ERRED IN APPOINTING ITS OWN EXCLUSIVE EXPERT, ACCEPTING THE WRITTEN REPORT OF ITS OWN EXPERT, SETTING THIS MATTER DOWN FOR A HEARING INSTEAD OF FORTHWITH ADOPTING THE REPORT OF ITS EXPERT AND THEN NOT ADOPTING THE FINDINGS OF ITS OWN EXPERT AS THE FINDINGS OF THE COURT AND ULTIMATELY REJECTED THE OPINION OF ITS OWN EXPERT BECAUSE OF A SUPPOSED FAILURE OF PROOF, THE DEFENDANT-APPELLANT HAVING NO INDEPENDENT OPPORTUNITY TO HAVE HIS OWN EXPERT EXAMINE THE ORIGINAL AUDIO TAPES.
The factual theory upon which Singerman predicates both his petition for post-conviction relief and his motion for a new trial is that there are erasures, alterations or gaps on one of the tape recordings of his alleged drug transactions, and that, had the recording been complete, it would have reflected either coercion amounting to entrapment or an effort, on Singerman's part, to withdraw from the transaction. Singerman contends, in the alternative, that the State withheld exculpatory evidence, by altering the tape recordings, in violation of his rights under Brady v. Maryland (1963), 373 U.S. 83, or that the fact that the tapes have been altered is newly discovered evidence warranting a new trial.
In support of these claims, Singerman relied upon the testimony of the court-appointed expert, Ted R. Lewis. Singerman also called his own witness, Gary King, but King acknowledged that he was not an expert in the area of audiotape authentication, and King had not examined the original tape recording. Although King was allowed to testify, he was treated as a lay witness. Lewis's testimony was that there were no alterations to five of the six tape recordings. The sixth tape recording, which was Exhibit Fourteen in the original trial, had, according to Lewis, three gaps, or lapses, in which information was not being recorded. Because no sound of a stop or pause button being pushed was recorded on the tape, Lewis concluded that these gaps were probably due to a malfunction in the recording system. Lewis acknowledged that he could not state that any information had been erased from the tape.
The State called James John Ryan, an expert on audiotape authentication from the Federal Bureau of Investigation. Although Ryan was critical of Lewis's report and testimony, he offered no opinion of his own concerning the tape recordings, because he had not examined the original tape recordings.
Singerman had the burden of proof on his petition for post-conviction relief and his motion for a new trial. We agree with the trial court that the evidence he presented proved, at most, that there were three lapses on one of the tape recordings, which might have been due to equipment failure. Although Lewis had not examined the recording system, he acknowledged that it might have been a voice-activated system. Ryan testified concerning problems with body-wire, remote recording systems, which would account for occasional lapses in the signal being recorded.
Because Singerman's evidence fell short of establishing that the State had, either deliberately, or through negligence, withheld evidence, we agree with the trial court that Singerman failed to prove his post-conviction relief claim.
Although the existence of three lapses on one of the six audiotapes of the alleged drug transactions would have been relevant to Singerman's claim that he was coerced into committing the offense, or that he attempted to withdraw from the commission of the offense, Singerman has failed to establish that this evidence could not, with reasonable diligence, have been discovered at the time of his original trial. The tapes were offered in evidence at his original trial, the tapes were available to Singerman before the trial, and he had the same opportunity, before the trial, to discover the existence of the alleged lapses in the sixth audiotape recording that he had after the trial. Therefore, we agree with the trial court that Singerman has failed to establish his entitlement to a new trial on the grounds of newly discovered evidence.
In support of this assignment of error, Singerman contends that the trial court erred by refusing to order the original tapes to be delivered into the possession of his expert, Gary King, for examination and analysis prior to the hearing on his petition for post-conviction relief and motion for a new trial. Singerman did file a motion to have the original tapes delivered to his expert. This motion was filed on December 18, 1997. The trial court never ruled on this motion, but on April 7, 1998 the trial court ordered that the tapes be sent to its expert, Ted Lewis. Following Lewis's report the State sought the release of the tapes for review by its expert, "in light of the findings of Ted Lewis and his report." On May 6, 1998, Singerman filed a Supplemental Motion for a New Trial, in which he appeared to be adopting Lewis's report, which Singerman understandably regarded as favorable, since it supported his claim that there were places on the recording where information was not recorded. On May 11, 1998, Singerman filed a motion that included a request for an immediate hearing on his motion for a new trial. In his memorandum in support of this motion, Singerman recited that the trial court had not allowed him to have his own expert examine the original tape recordings, but Singerman appeared to be relying upon Lewis's report. The hearing was held on August 6-7, 1998.
We understand and approve of the trial court's wanting its own expert to have the first opportunity to examine the original tape recordings. Singerman did not thereafter renew his request to have the original tape recordings delivered to his own expert for review. To the contrary, he requested an immediate hearing, and he appeared to be adopting, and relying upon, the conclusions of the trial court's expert. At the hearing, although Singerman's examination of the trial court's expert, Ted Lewis, was formally treated as cross-examination, it was apparent that Singerman was embracing Lewis's testimony, and was endeavoring to establish Lewis's credentials as an expert, just as the State was challenging Lewis's credentials as an expert, and was attacking the validity, and scope, of Lewis's conclusions.
In our view, the record supports the conclusion that Singerman abandoned his effort to have his own expert, Gary King, examine the original audiotapes once he became aware of the conclusions reached by Ted Lewis, the trial court's expert. Consequently, we find no prejudicial error in the trial court's failure to have made the tapes available to Singerman's expert before the hearing. In this connection, it is worth noting that although the State made an attempt, following Lewis's report, to obtain access to the original tape recordings by its expert, this had not been accomplished by the time of the hearing on Singerman's petition for post-conviction relief and a motion for a new trial. Thus, neither the State's expert nor Singerman's expert had had access to the original tape recording by the time of the hearing.
Singerman's First Assignment of Error is overruled.
 III
Singerman's Second Assignment of Error is as follows:
 THE COURT PREJUDICIALLY ERRED IN REQUIRING THE DEFENDANT-APPELLANT TO TAKE THE STAND IN VIOLATION OF HIS FIFTH AMENDMENT RIGHTS UNDER ITS VIEW THAT 2953.21 HEARINGS ARE TOTALLY CIVIL IN SCOPE.
At the hearing on his petition for post-conviction relief and motion for a new trial, the State called Singerman as a witness, as upon-examination. Singerman's counsel vigorously objected to this procedure. Nevertheless, the trial court overruled Singerman's objection, and permitted the State to call Singerman to the witness stand to testify. At no point during Singerman's testimony did he assert his privilege against self-incrimination pursuant to the Fifth Amendment to the United States Constitution. The State limited its examination of Singerman to a review of the testimony he gave at his original trial.
In its closing argument, at the hearing on Singerman's petition for post-conviction relief and for a new trial, the State discussed the issue of Singerman's testimony:
 The State would submit that if Mr. Singerman took the stand, number one, he was not ordered to do so, he did so voluntarily, if he did not want to testify, his attorney should have invoked — should have advised him to invoke his Fifth Amendment privilege.
 I don't know what that does to Mr. Singerman. Perhaps a civil suit against his attorney. I don't know. However, that's what he should have done.
 In the interest of justice, however, and if the Court feels uncomfortable with this, the Court of course can — and if there is a — the Court feels there is a problem with it, and I will bring this to the attention of the Court, under State vs. Wickline when there's a Constitutional problem the least drastic remedy is to be preferred.
 If the Court desires to strike that testimony, I don't believe that it is necessary; however, the State would not oppose it. If Mr. O'Brien [Singerman's counsel] wants to make a motion to strike the testimony of Mr. Singerman, again, in the interest of justice, I don't believe he is right for the reasons I've stated, the State would not oppose it.
Following Singerman's closing argument, the following colloquy ensued:
 MR. KATCHMER [representing the State]: You're declining the offer to file a motion to strike; am I correct?
MR. O'BRIEN: Pardon me?
 MR. KATCHMER: You're declining to ask for the Court to strike the —
 MR. O'BRIEN: I'm standing on the record in this case. I don't have to —
 MR. KATCHMER: So you are declining to ask the Court to strike that testimony? You are happy with that testimony?
MR. O'BRIEN: Your Honor, we're finished.
 THE COURT: All right. Then it is clear that you do not wish to make a motion with regard to Mr. Singerman's testimony, and the Court stands on that — on its prior ruling. Okay.
We agree with the State that any error that might have been involved in the trial court's handling of the State's calling of Singerman to the witness stand to testify was cured when the State offered to consent to Singerman's testimony being stricken, and Singerman declined the offer. This was, of course, a hearing to the bench, without a jury. Singerman had the opportunity, at that time, to have all of his testimony stricken, in which event the trial judge would have disregarded it. In view of Singerman's failure to avail himself of this opportunity, we conclude that any error in the trial court's initial ruling on his objection to being called to the witness stand to testify is harmless. We need not decide, and do not decide, whether that ruling was correct.
Singerman's Second Assignment of Error is overruled.
 IV
Both of Singerman's assignments of error having been overruled, the judgment of the trial court isAffirmed.
WOLFF and YOUNG, JJ., concur.
Copies mailed to:
George A. Katchmer Daniel J. O'Brien Hon. Adele M. Riley